IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN OWEN HALL, *
    Plaintiff
                                               *
    v.                                             CIVIL ACTION NO. RWT-10-701
                                               *
CORRECTIONAL MEDICAL SERVICES,
et al.,                                        *
    Defendants
                                              ******

**MEMORANDUM OPINION**

Brian Owen Hall filed this 42 U.S.C. § 1983 prisoner civil rights action seeking compensatory damages. The Complaint alleges that personnel employed by Correctional Medical Services, Inc. ("CMS"), the prison health care provider, failed to properly monitor and interpret Hall's medical problems, leading to a heart attack on January 30, 2009. Hall files this action alleging both a violation of his Eighth Amendment rights under 42 U.S.C. § 1983 and a theory of tort liability for medical malpractice.[1]

Defendants CMS and Nurse Rose Mary Robinson, R.N.[2] ("the medical Defendants") have filed a dispositive motion, ECF No. 12,[3] and Hall has filed oppositions thereto, ECF Nos. 14 and 15. Upon review of the papers filed, the court finds a hearing in this matter unnecessary.

---

[1] Hall's state tort claim for medical malpractice shall be dismissed without prejudice. Under Maryland law, such claim could proceed only after the parties complete review before the Maryland Health Claims Arbitration Board. See Md. Code Ann., Cts & Jud. Proc., §3-2A-01 et seq.; see also Davison v. Sinai Hospital of Balt. Inc., 462 F.Supp. 778, 779-81 (D. Md. 1978), aff'd 617 F.2d 361 (4th Cir. 1980); Group Health Ass'n, Inc. v. Blumenthal, 295 Md. 104, 114 (1983). There is no demonstration that Hall has sought or completed such review.

[2] The docket shall be modified to correctly reflect Defendant Robinson's full name.

[3] Hall listed additional defendants, including "Doctors and Nurse of CMS," "Correctional Medical Service Employed by Contractor Dr. Aldana," Nurse A. McLoy, LPN, and Nurse Pamela Reedham, RN, in the caption of his Complaint. Counsel for CMS and Nurse Robinson did not accept service for these entities and individuals. For reasons apparent herein, had service been obtained, these parties would also have been entitled to dismissal or summary judgment in this case.

See Local Rule 105.6. (D. Md. 2010). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted

**BACKGROUND**

Hall has a history of hypertension ("HTN") and hyperlipidemia (high cholesterol). Blood taken on July 31, 2008, showed slightly elevated blood sugar and total bilirubin not deemed by medical personnel to denote the risk of an imminent heart attack or to require medical treatment.[4] ECF No. 12, Exhibit A, ¶ 3, Affidavit of CMS Medical Director Suresh Menon, M.D.[5]

On November 12, 2008, Hall submitted a sick call request form complaining of pain in the right leg. When seen by Licensed Practical Nurse Alexandra McCoy on November 18, 2008, Hall reported that sitting for extended periods of time caused pain in the right thigh, and the pain had been occurring for a two week period. McCoy found no abnormality upon examination but provided Motrin and muscle rub for pain and referred Hall to a physician's assistant. Id., Exhibit A, ¶ 4.

On December 1, 2008, Hall again complained that his right leg still hurt. On December 6, 2008, Registered Nurse Pamela Needham examined Hall, who by then complained of pain in both legs and asked whether the pain could be a sign of gout. Needham found moderate swelling in both legs and notified Erwin Aldana, M.D. of her findings. Aldana ordered several blood tests, including a uric acid level test to rule out gout. Id., Exhibit A, ¶ 5.

On January 15, 2009, Hall submitted a sick call slip complaining of leg pain. During a nursing evaluation on January 20, 2009, he stated he had pain in both knees. Examination

---

[4] Additionally, Hall's white blood cell count was low, but normalized without intervention. ECF No. 12, Exhibit A, ¶ 3, Affidavit of CMS Medical Director Suresh Menon, M.D

[5] The Menon affidavit references the actual medical record, found at ECF No. 12, Exhibit B.

2

showed no swelling, tenderness or crepitus[6] in the knees, and Hall walked with a normal gait. Hall was scheduled to see a physician's assistant to follow up on blood tests. Id., Exhibit A, ¶ 6.

On January 30, 2009, Hall came to the dispensary complaining of chest pain and difficulty breathing. A nurse noted that Hall's skin was cool, sweaty and pale, and his pulse was slow and his blood pressure low. Oxygen and four baby aspirin were administered. An electrocardiogram ("EKG") showed second-degree atrioventricular block, a disorder in which some impulses in the upper (atrial) chambers of the heart are not conducted to the lower (ventricle) chambers. Dr. Aldana was notified and Hall was transported to Washington County Hospital (WCH), where he was diagnosed with an acute inferior wall myocardial infarction (a heart attack). Hall underwent a cardiac catheterization and stent[7] placement in the middle and distal right coronary artery and was discharged from WCH on February 1, 2009. Id., Exhibit A, ¶¶ 7-8.

Hall was admitted to the infirmary at the Maryland Correctional Institution at Hagerstown for observation, and was discharged back to his cell on February 3, 2009. Dr. Aldana prescribed Plavix (to prevent clot formation), metoprolol (for hypertension), Zocor (to decrease cholesterol), and Zestril (also for hypertension). A request for a cardiology follow-up in two weeks was made. Id., Exhibit A, ¶ 9.

It is unclear whether Hall next submitted a sick call slip on January 6, 2009, or on February 6, 2009. In any event, he was evaluated on February 10, 2009, for complaints of leg and knee pain. A physician's assistant examined Hall and found mild swelling and tenderness to palpation in the right leg, without crepitus or laxity of the ligaments. It was noted that Hall walked with a slightly apprehensive gait. Hall indicated the pain originated in the lower femur

---

[6] Crepitus includes crackling or a grating feeling in a joint.

[7] A stent is a small metal mesh tube that expands inside the coronary artery to prevent the artery from closing up again due to the presence of fatty plaque or blood clots.

(thigh bone) and radiated to his knee. The physician's assistant prescribed Tylenol for pain and ordered x-rays of the right knee and femur. The x-rays, taken February 18, 2009, showed no bone abnormalities. Id., Exhibit A, ¶¶ 9-10.

Hall received his follow-up cardiac evaluation from Ernest K. Amegashie, M.D., in either late February or early March of 2009. A nuclear stress test ("NST") and echocardiogram were ordered to further assess Hall's cardiac function. Id., Exhibit A, ¶ 13. The tests, performed on April 15, 2009, revealed no evidence of myocardial eschemia (insufficient blood supply to the heart muscle) or infarct (tissue death due to lack of oxygen), and showed normal left ventricular function. Dr. Amegashie concluded the angioplasty was working well, and recommended that Hall continue taking Zestril. Id., Exhibit A, ¶ 14.

Hall complained of chest pains in a sick call slip submitted May 19, 2009. A nurse found all vital signs within normal limits on May 27, 2009,[8] and found no sign that Hall had suffered another heart attack. Id., Exhibit A, ¶15. Hall complained of a foot problem and the need for medication refills on July 19, 2009. He was advised the medications had been ordered. Doctor Wenelisa Navarro, M.D. examined Hall in the Chronic Care Clinic on August 3, 2009. Hall did not complain about his foot at that time. His blood pressure was within normal limits and he was asymptomatic post-stent placement. Dr. Navarro requested a follow-up cardiac consultation and prescribed lisinopril (the generic form of Zestril) for Hall's cardiac condition. Id., Exhibit A, ¶ 16.

Hall complained of right leg and foot pain on September 2, 2009. Registered Nurse Heather Ball examined Hall on September 9, 2009. Hall told her that since the stents were put in through his right leg, the leg hurt, especially after periods of sitting with the leg bent. Ball found

---

[8] Defendants provide no explanation for the delay in assessing chest pain in a patient known to have suffered a heart attack. Fortunately, Hall did not suffer apparent injury as a result.

4

no swelling and noted good pulses in the right leg and foot. Id., Exhibit A, ¶ 17. On October 19, 2009, Hall again complained of pain, this time in the left leg. Licensed Practical Nurse Kelly Teach examined him on October 22, 2009, at which time Hall denied having pain. Id., Exhibit A, ¶ 18.

Dr. Menon evaluated Hall in the Chronic Care Clinic on November 13, 2009, at which time Hall denied chest pain or any other problems. Dr. Menon noted the cardiology follow-up ordered by Dr. Navarro had not occurred, and indicated he would present the request for follow-up to the collegial review panel.[9] Dr. Menon required a cardiologist to recommend whether Hall's prescription for Plavix should continue, given that nine months had passed since stent replacement. In the meantime, all medications were continued. Dr. Menon noted that Hall had an excellent lipid profile given his status as a patient with coronary artery disease ("CAD"). The cardiology consultation was approved on November 16, 2009. Id., Exhibit A, ¶ 19. Hall's annual physical examination, performed on November 20, 2009, was uneventful. Id., Exhibit A, ¶ 20.

On December 11, 2009, Dr. Menon noted the results of the cardiologist's consultation, which recommended no changes to Hall's medication regimen. Dr. Amegashie opined that Hall most likely had peripheral arterial disease ("PAD") in his right leg and should undergo an arterial Doppler (donogram) study to see if blood flow through the legs existed due to a blockage in the arteries. The request for the study was approved on December 15, 2009. Id., Exhibit A, ¶ 21. The test, performed on December 30, 2009, showed no abnormality; Hall's blood vessels were widely open and showed no blockages. Id., Exhibit A, ¶ 22.

---

[9] Collegial review is the process by which a consultation request is presented to Wexford Health Sources, Inc. ("Wexford"), the utilization review contractor for the State of Maryland. Wexford, which is not affiliated with CMS, must approve both on-site and off-site consultations for certain medical devices and tests.

Hall offered no complaints of chest pain when evaluated by Dr. Menon in the Chronic Care Clinic on April 29, 2010, and has offered no further complaints regarding leg pain. Id., Exhibit A, ¶¶ 23-24.

According to Dr. Menon, pain in either leg is not a typical warning sign for CAD, and CAD does not typically cause leg pain. Leg pain is typically a sign of PAD, from which Hall does not suffer. Id., Exhibit A, ¶ 25.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(c)(2) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

**ANALYSIS**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment. See Wilson v. Seiter, 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Hall must demonstrate that the actions of Defendants (or their failure to act) amounted to "deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"With regard to inadequate medical attention, the objective component is satisfied by a serious medical condition." Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The subject component entails something more than mere negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm with knowledge that harm will result. Farmer, 511 U.S. at 835.

Hall alleges that defendants denied him proper treatment for abnormal blood test results, pain in his legs, and a blocked artery. Hall contends that the denial of medical treatment resulted in him suffering a heart attack. A heart attack is clearly a serious medical condition that satisfies

7

the objective prong of an Eighth Amendment *prima facie* case. Hall's case fails, however, because he has produced no evidence proving the subjective (deliberate indifference) prong.

Hall has produced no evidence indicating that defendants were subjectively aware of the need to take additional measures to prevent his heart attack and failed to provide the needed care. At most, Hall's case demonstrates that the defendants were negligent in treating or preventing the heart attack. However, mere medical negligence or malpractice does not rise to a constitutional level. See Estelle, 429 U.S. at 106. Further, "general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998) (citing Farmer, 511 U.S. at 837). In other words, in this case, the defendants must have actually drawn the inference that Hall's leg pain and abnormal blood test results signified an imminent heart attack requiring additional preventative measures.

Examination of the medical records does not support Hall's contention that the failure to provide medical care led to Hall's heart attack, let alone that defendants acted with the deliberate indifference necessary to constitute a constitutional violation.[10] Rather, Hall's medical records demonstrate that defendants have monitored, evaluated, and treated Hall on numerous occasions, and that the leg pain and slightly abnormal blood test results were not indicative of an imminent heart attack. Because Hall has not produced any evidence showing that defendants were subjectively aware of the need for further medical attention, but failed to provide it, Hall has not sustained his burden of demonstrating an Eighth Amendment violation.

---

[10] This Court is entitled to rely on the medical records and the affidavits of medical personnel in determining whether Plaintiff has received constitutionally adequate medical care under 42 U.S.C. § 1983. See Bennett v. Reed, 534 F.Supp. 83, 86 (E.D.N.C. 1981).

## CONCLUSION

In light of the above analysis, Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted. A separate Order follows.


Date:   December 1, 2010             /s/
                                     Roger W. Titus
                                     United States District Court Judge